**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES NICE** | ) CASE NO. |
| 1391 Vermilion Dr. | ) |
| New Franklin, OH 44203 | ) JUDGE |
| | ) |
|        Plaintiff, | ) |
|    vs. | ) **COMPLAINT** |
| | ) |
| **CITY OF AKRON** | ) **DEMAND FOR JURY TRIAL** |
| 146 South High St., Ste. 130 | ) **Pursuant to Fed. R. Civ. P. 38(b)** |
| Akron, Ohio 44308 | ) |
| | ) |
| And | ) |
| | ) |
| **MAYOR DANIEL HORRIGAN** | ) |
| (In his individual and official capacities) | ) |
| 146 South High St., Ste. 130 | ) |
| Akron, Ohio 44308 | ) |
| | ) |
| AND | ) |
| | ) |
| **AKRON POLICE CHIEF KENNETH BALL** | ) |
| (In his individual and official capacities) | ) |
| 217 South High St. | ) |
| Akron, OH 44308 | ) |
| | ) |
| **JOHN DOE DEFENDANTS** | ) |
| | ) |
| | ) |
|      Defendants. | |

Plaintiff, James Nice, by and through counsel, submits his Complaint in this action against

Defendants, and hereby alleges as follows:

## INTRODUCTORY STATEMENT

This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress:

1.  Defendants' malicious and highly-public attack on Plaintiff's character and reputation, which constitutes defamation *per se*, defamation, and an invasion of privacy under the laws of the State of Ohio;

2.  Defendants' abuse of the legal process for motives unrelated to seeking justice in an attempt to damage Plaintiff, which violates Ohio law;

3.  Defendants' deprivation, under color of state law, of Plaintiff's rights, privileges, immunities, and right to due process, - all guaranteed under Federal Law and/or the Constitution of the United States, which violates 42 U.S.C. §1983 ("Section 1983"), including retaliation for Plaintiff's exercise of his First Amendment rights;

4.  Defendant Ball's criminal utilization of false writings to unduly pressure Plaintiff to resign, for which Ball is civilly liable under Ohio law; and

5.  Defendants' conduct, which was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff, and which has caused, and continues to cause, Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputation, and mental anguish and emotional distress.

## THE PARTIES

6.  The Plaintiff, James Nice, (hereinafter "Plaintiff") is and at all times mentioned herein, a private individual, over the age of majority, residing in the City of New Franklin, County of Summit, State of Ohio. Plaintiff served over 6 years as the Police Chief of the City of

Akron and, prior to the acts of Defendants set forth below, enjoyed a very good reputation in both his professional and personal life, and was well-respected in his local and business community.  At all times material, Plaintiff was an "employee" of the City of Akron under applicable law.

7. Defendant, Mayor Daniel Horrigan, both in his official and individual capacities (referred to collectively as "Horrigan") was, at all times material, an individual and public official, over the age of majority, residing in the County of Summit, State of Ohio, and acting in his individual and/or official capacity, as Mayor for the City of Akron.

8. Defendant, Kenneth Ball, both in his official and individual capacities (referred to collectively as "Ball") was, at all times material, an individual and public official, over the age of majority, residing in the County of Summit, State of Ohio, and acting in his individual and/or official capacity as a managing police officer for the City of Akron.

9. Defendant, the City of Akron, is a municipal corporation and body politic and corporate, organized under the Constitution and laws of the State of Ohio.

10. Defendant John Does, upon information and belief, are agents of the City of Akron in some capacity.

**JURISDICTION AND VENUE**

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions and issues regarding the deprivation of Plaintiff's civil rights under Section 1983. The Court has supplemental jurisdiction over Plaintiff's related claims arising under Ohio law pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, occurred in this district.

**STATEMENT OF FACTS**

13. Plaintiff was hired on June 8, 2011, as the Chief of Police for the City of Akron by then-Mayor Donald Plusquellic.

14. Prior to taking this position, Plaintiff served honorably in the U.S. Navy, was a teacher for 4 years, and was a special agent in the Federal Bureau of Investigation ("FBI").  At the FBI, Plaintiff served in various field offices and as an executive working at FBI headquarters in Washington, D.C., where he oversaw covert FBI operations worldwide.

15. Plaintiff was hired after a national search by former Akron Mayor Donald Plusquellic. When Horrigan took office, he was intent on placing individuals whom he thought would be loyal to him in leadership roles in the Akron Police Department and in other areas of city government.

16. For instance, Horrigan appointed Charles Brown ("Brown") as Safety Director of the City of Akron.  Brown was formerly a member of the Akron Police Department under Plaintiff, and Plaintiff adamantly opposed this appointment because of Brown's performance and other issues that Plaintiff believed made Brown not an appropriate selection. Brown referred to himself as "assistant chief of police," though this was not an accurate statement because there was no such position.  Brown was actually given the position of Assistant to the Mayor.

17. Horrigan also pressured Plaintiff into promoting others into high-level positions in the police department because these individuals were loyal to Horrigan, though these individuals were not qualified for those positions.

18. Horrigan often attempted to assert his influence over Plaintiff in a way designed to exert Horrigan's control over the Akron Police Department. Plaintiff refused to acquiesce to Horrigan's demands when Plaintiff reasonably believed that doing so would either endanger the citizens of, and visitors to, the City of Akron, or when Horrigan's demands threatened the orderly operation of the Akron Police Department.

19. Plaintiff approached various members of Akron City Counsel regarding Horrigan's attempt to unduly influence Plaintiff into carrying out his duties in ways that threatened the City's safety and/or orderly operation of the Police Department, and Horrigan was notified of this complaint.

20. When it became apparent to Horrigan that Plaintiff would not submit to unmitigated and unconditional loyalty, Horrigan became bent on removing Plaintiff as police chief.

21. Further, during his tenure as police chief, Plaintiff exercised his First Amendment rights to criticize the pardoning of convicted criminals and to make protected comments regarding Plaintiff's opinion that some judges were too lenient in sentencing convicted criminals.

22. Horrigan disapproved of these comments, prompting Horrigan to find ways to retaliate against Plaintiff, as more fully described below.

23. On or around this time, Plaintiff's nephew, Joseph Nice, was investigated and charged with grand theft, forgery, and tampering with evidence.  Those charges were dropped in their entirety, despite overwhelming proof of wrongdoing.  Upon information and belief,

Defendants and John Does used their influence to entice prosecutors to offer Joseph Nice some type of immunity in order to coerce false testimony from Joseph Nice to be used against Plaintiff.

24. Beginning on August 25, 2017, Defendants collectively embarked on a path of false and defamatory allegations regarding Plaintiff, as well as abuse of the legal process, all designed to force Plaintiff out of his position as chief of police.

25. First, on August 25, 2017, Ball placed a phone call to Plaintiff and informed Plaintiff that Joseph Nice alleged that Plaintiff had made racially derogatory comments towards Brown. Ball also indicated that there is a tape-recorded conversation that Ball heard in which Plaintiff made these racially derogatory comments towards Brown.  No such recording exists because Plaintiff never made those statements.

26.  Ball further conveyed to Plaintiff that Joseph Nice alleged that Plaintiff was involved in criminal activity in relation to a used car lot owned by Joseph Nice.  On the same call, Ball asked for Plaintiff's resignation. Ball stated to Plaintiff that contesting the allegations would bring negative publicity to the Akron Police Department.  Plaintiff never admitted to making the comments and was incredulous at the possibility that such a recording existed since he never made these comments.

27. Nevertheless, desiring to avoid causing embarrassment to the Akron Police Department and to his family, Plaintiff was unjustly forced to resign on August 26, 2017.

28. On or around August 28, 2017, Horrigan held a press conference in which he discussed Plaintiff's resignation and knowingly and/or recklessly made false allegations against Plaintiff.  Specifically, Horrigan told the media that Plaintiff made derogatory statements

about fellow officers.  In a subsequent official press conference made on behalf of the mayor, Horrigan's chief of staff, James Hardy, indicated that these comments were racial in nature.

29. This is a false statement

30. In that same August 28, 2017, press conference, Ball echoed these false allegations.  Ball did this in hopes that Ball would be named Plaintiff's replacement as Akron Chief of Police (which ultimately occurred without any thorough search for candidates, which is customary).

31. Upon information and belief, Horrigan, Ball, and the John Doe Defendants made similar defamatory statements to others and to various news outlets both before and after these press conferences.

32. The untrue allegations that Plaintiff made racially derogatory statements stand in stark contrast to his character and history.  Plaintiff has been praised by the African-American community in Akron.  Such praise came from many esteemed leaders in the Akron African-American community, such as the former president of the Akron chapter of the NAACP who was president during most of Nice's tenure as Police Chief.

33. Following Plaintiff's unjustly forced resignation, Defendants utilized Joseph Nice's coerced statements to instigate a bogus criminal prosecution against Plaintiff.

34. Such unjust prosecution against Plaintiff was initiated and was ultimately transferred to the Cuyahoga County Prosecutor's office for investigation supposedly in an effort to avoid any conflict of interest that the Summit County Prosecutor would have in investigating Plaintiff.

35. Horrigan, Ball, and the John Does perverted the legal process to target Plaintiff in an attempt to justify their forcing Plaintiff to resign and in retribution for Plaintiff's exercising his First Amendment rights.

36. Plaintiff was threatened by prosecutors that he would be charged with a number of serious felonies if Plaintiff did not plead to a misdemeanor charge of misuse of a computer.  This allegation stemmed from Plaintiff's use of a computer database to legitimately investigate a claim made by a victim of fraud related to the ownership of a motor vehicle.  Such use of a computer was in no way improper or illegal, but in an effort to avoid further prosecution for more serious meritless offenses and in attempt to minimize the scathing press coverage he experienced as a result of the meritless prosecution, Plaintiff plead to this charge.

37. Several law enforcement entities, including the Ohio Bureau of Motor Vehicles, had already investigated this conduct and declined to initiate any further legal proceedings, showing that these charges were motivated by reasons other than true law enforcement prerogatives.

38. Because Horrigan, Ball, and other City agents were able to pervert the legal process and maliciously drive prosecution against Plaintiff in this respect, Plaintiff was forced to plead to the misdemeanor offense to avoid having to undergo a further perverted legal process.

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Defamation and Defamation *Per Se* – Libel/Slander under Ohio Law)**

39. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

40. As described above, Horrigan, Ball, and other agents of the City of Akron made defamatory statements about, of, and concerning Plaintiff of such a nature that it can be presumed, as a matter of law, that they tend to degrade or disgrace Plaintiff, of whom they are written or spoken, or hold him up to a public hatred, contempt or scorn.

41. Horrigan, Ball, and other agents of the City of Akron contacted various individuals, to be revealed in the discovery process, and published these materially false statements in a malicious action to damage Plaintiff's good reputation.

42. All relevant parties reasonably understood that these statements referred to Plaintiff and reasonably understood them to mean that Plaintiff had made such statements, was unethical, and was involved in behavior incompatible with the proper conduct of his business, trade or profession.

43. The aforesaid defamatory statements made by Horrigan, Ball, and other agents of the City of Akron were and are false and were not privileged.

44. Defendants made said statements knowing the falsity thereof or without using reasonable care to determine the truth or falsity thereof.

45. Horrigan, Ball, and other agents of the City of Akron made the aforesaid defamatory statements with malice and with the intent to injure Plaintiff's good name and reputation and to interfere with Plaintiff's employment, in that they harbored ill-will toward Plaintiff.

46. Horrigan, Ball, and other agents of the City of Akron's conduct in publishing the aforementioned false statements was knowing, malicious, willful, and wanton and/or showed a reckless disregard for the truth, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to

his professional and personal reputation, and severe mental anguish and emotional distress.

47. Defendants engaged in the above-described actions recklessly, maliciously, and intentionally entitling Plaintiff to an award of statutory, compensatory, and other damages.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Invasion of Privacy - False Light under Ohio Law)**

48. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

49. Horrigan, Ball, and other agents of the City of Akron purposely provided the Akron Beacon Journal and other media outlets with information containing many false and defamatory statements about Plaintiff, thereby giving great publicity to these statements with their subsequent publication in the Akron Beacon Journal newspaper (at least on 22 front pages of that newspaper) and on the internet, allowing said statements to be read, on an ongoing basis, by a large number of people.

50. Horrigan, Ball, and other agents of the City of Akron's statements placed Plaintiff before the public in a false light.

51. Horrigan, Ball, and other agents of the City of Akron's statements are highly offensive to a reasonable person.

52. Horrigan, Ball, and other agents of the City of Akron were at fault and knew or were reckless to the falsehood of the statements.

53. Horrigan, Ball, and other agents of the City of Akron's conduct in publishing the aforementioned false statements was knowing, malicious, willful and wanton and/or

showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputation, and severe mental anguish and emotional distress.

54. Defendants engaged in the above-described actions recklessly, maliciously, and intentionally, entitling Plaintiff to an award of statutory, compensatory, and other damages.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
**(Section 1983 – First and Fourteenth Amendment Retaliation)**

55. Plaintiff realleges and incorporates by reference the paragraphs above, as though fully set forth herein.

56. In retaliation for Plaintiff exercising his First Amendment rights (as incorporated by the Fourteenth Amendment), as described above, Defendants retaliated and/or adopted a custom, policy, and/or practice of retaliation against Plaintiff.

57. Defendants violated Plaintiff's constitutional rights via 42 U.S.C. §1983.

58. As a direct result of this retaliation that Defendants engaged in, endorsed and adopted, Plaintiff has suffered damages.

59. Defendants engaged in the above-described actions recklessly, maliciously, and intentionally entitling Plaintiff to an award of statutory, compensatory, and other damages.

**FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Abuse of Process Under Ohio Law)**

60. Plaintiff realleges and incorporates by reference the paragraphs above, as though fully set forth herein.

61. Legal proceedings against Plaintiff have been perverted to attempt to accomplish an ulterior purpose for which it was not designed, to wit: retaliate against Plaintiff, interfere with his employment, politically damage him, and harm his good and longstanding reputation in the community.  These perverted legal proceedings were initiated and perpetuated by Defendants.

62. Direct substantial damage has resulted to Plaintiff from Defendants' wrongful use of process, and that Plaintiff was obliged to defend himself and to expend money and time in his defense.

63. Defendants engaged in the above-described actions recklessly, maliciously, and intentionally entitling Plaintiff to an award of statutory, compensatory, and other damages.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANT BALL**
**(Civil Liability for Criminal Acts under Ohio Rev. Code §2307.60(A)(1) and §2921.03(A) – False Recordings)**

64. Plaintiff realleges and incorporates by reference the paragraphs above, as though fully set forth herein.

65. Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

66. Criminal statute Ohio Rev. Code § 2921.03(A) provides that no person "shall attempt to influence . . . a public servant . . . by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner."

67. As described above, no recording or writing exists in which Plaintiff admits to using racially derogatory comments.  Ball therefore used fraudulently contrived recordings to influence the decision to compel Plaintiff to resign.

68. As a direct and proximate result of Ball's activity, Plaintiff has suffered damages.

69. Defendants engaged in the above-described actions recklessly, maliciously, and intentionally entitling Plaintiff to an award of statutory, compensatory, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

B. Declare that the City is vicariously liable for its employees' and public officials' acts described above and hold the City liable for said acts;

C. For appropriate compensatory, economic and non-economic, damages in an amount to be determined at trial;

D. For appropriate equitable relief against all Defendants enjoining and permanently restraining them from continuing to commit these violations, and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the

unconstitutional and unlawful practices are eliminated and do not continue to affect Plaintiff;

E. For an award of punitive damages, reasonable attorney's fees, and costs, including pre and post judgment interest, from those Defendants against whom such damages are legally available; and

F. For such other and further relief to which Plaintiff may show himself justly entitled.

Respectfully submitted,

*/s/ Shawn Romer*
Shawn Romer (0084251)
**Romer Law Firm, LLC**
2012 W. 25th St., Ste. 716
Cleveland, OH 44113
Tel: 216-644-3722
Fax: 216-803-6674
Email: sromer@romerlawfirm.com
Attorney for Plaintiff

*/s/ Scott Perlmuter*
Scott Perlmuter (0082856)
**Tittle & Perlmuter**
2012 W. 25th St., Ste. 716
Cleveland, OH 44113
Tel: 216-308-1522
Fax: 888-604-9299
Email: scott@tittlelawfirm.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Shawn Romer*
Shawn A. Romer (0084251)
Attorney for Plaintiff

– 14 –