**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JAMES NICE,                              )        CASE NO.  18-cv-1565
                                         )
                    PLAINTIFF,           )        JUDGE SARA LIOI
                                         )
vs.                                      )
                                         )        MEMORANDUM OPINION AND
                                         )        ORDER
CITY OF AKRON, et al.,                   )
                                         )
                    DEFENDANTS.          )

This matter is before the Court on the motion of non-parties, Matthew Meyer ("Meyer") and the Cuyahoga County Prosecutor's Office ("CCPO") (collectively "movants"), to quash the subpoenas issued by plaintiff, James Nice ("Nice"). (Doc. No. 29 [Mot.].) Movants also seek a protective order precluding them from submitting to a deposition or producing documents. Nice opposed the motion. (Doc. No. 31 [Opp'n].) On August 1, 2019, the Court requested that the parties provide supplemental briefing to determine whether Nice's Section 1983 claim is cognizable under *Heck v. Humphrey*, 512, U.S. 477, S. Ct. 2364, 129 L. Ed. 2d 383 (2006). Both the *Heck* analysis and the motion to quash have been briefed and are ripe for a decision.

**I.        Background**

The facts surrounding this action have been set forth in various Memorandum Opinions, familiarity with which is presumed. To properly frame the pending motion, however, a brief factual overview is necessary. Nice originally filed a complaint on July 10, 2018 against the City of Akron (the "City), Mayor Daniel Horrigan ("Horrigan"), and

Police Chief Kenneth Ball ("Ball") (collectively "defendants") (Doc No. 1); the complaint was amended on December 27, 2018. (Doc No. 16 ["FAC"].) The FAC sets forth one federal claim under 42 USC § 1983 and five claims under Ohio law; all claims stem from defendants' alleged retaliation. Nice asserts that Horrigan, as newly-elected mayor, spearheaded a coordinated attack aimed at "see[ing] that [Nice] was removed as police chief." (FAC ¶¶ 17, 22.) The attack was predicated on Nice's critical statements about then-President Barack Obama and Nice's refusal to fill the police department's ranks with individuals loyal to Horrigan. (*Id.* ¶¶ 19, 23.)

The defendants ultimately forced Nice to resign and initiated an allegedly "bogus criminal investigation" into him. (*Id.* ¶¶ 27, 39.) To avoid the appearance of a conflict of interest, Nice's prosecution was transferred to the CCPO (*Id.* at ¶ 39.) "Then-Assistant Prosecuting Attorney in the [CCPO], Matthew Meyer, served as special prosecutor on the case." (Mot. at 189.) On February 13, 2018, Nice pleaded guilty "to a single count of Attempted Unlawful Use of Property LEADS ... a first-degree misdemeanor." (*Id.*)

Nice filed the instant lawsuit on July 10, 2018 at 9:41 a.m. (FAC ¶ 44.) Less than four hours later, Meyer filed a motion to vacate Nice's guilty plea, asking the state court to "restore the case to the court's active docket, and schedule the case for trial." (Mot. at 190, FAC ¶ 46.) Nice asserts that Meyer's motion evidences an additional abuse of the criminal process and "was intended to punish him ... for filing the instant lawsuit." (FAC ¶ 47.) In his sixth cause of action for "Civil Conspiracy under Ohio Law," Nice asserts that defendants "made an agreement with the [CCPO] to maliciously retaliate against

[him] for filing the instant lawsuit" and pursuant to this agreement the CCPO "attempted to vacate [Nice's] plea in order to pursue retaliatory charges against him." (*Id.* ¶¶ 80, 81.)

In furtherance of his civil conspiracy claim, Nice served a subpoena *ad testificandum* upon Meyer and a subpoena *duces tecum* upon the CCPO. (*See* Doc. Nos. 29-1 and 29-2.) In response, movants filed the instant motion to quash the subpoenas and for a protective order. Nice opposed the motion. (Doc. No. 31.) For the following reasons, the motion is granted in part and denied in part.

## II.     Law and Analysis

### A.     *Heck v. Humphrey*

The Court has reviewed the parties' supplemental *Heck* briefing and finds that dismissal of Nice's § 1983 claim is not appropriate at this time. Section 1983 allows a plaintiff to bring a private cause of action against a person who, under color of law, deprived him or her of a Constitutional right. 42 U.S.C. § 1983. But a plaintiff may not bring a § 1983 claim to challenge the validity of an underlying criminal judgment. *Heck*, 512 U.S. at 486. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

In *Heck*, the plaintiff's § 1983 claim was based solely on an unlawful investigation leading to his arrest. *Heck*, 512 U.S. at 479. Nice claims that the defendants deprived him of his First and Fourteenth Amendment rights by initiating a "bogus

criminal investigation" against him and coercing him to resign. (FAC at ¶¶ 24, 27, 64, 65.) It is well settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (collecting cases). Because Nice's § 1983 claim is based, in part, on alleged retaliation resulting in his coerced resignation—and because defendants have failed to address the sufficiency of the forced resignation portion of Nice's § 1983 claim—*Heck* does not require dismissal at this stage.

### B. Motion to Quash: Standard of Review

Movants seek to quash the subpoenas on two grounds: (1) the pendency of Meyer's motion to vacate Nice's plea[1] (Mot. at 189-91) and (2) the records and information sought are privileged. (Mot. at 191-94.) Movants' first concern is easily alleviated, as it is moot. On July 25, 2019, the state court denied Meyer's motion to vacate Nice's plea and this Court has taken judicial notice of the denial. (*See* Doc. No. 37 at 279 n. 3). As such, movants' motion turns on whether the requested testimony and documents are privileged.

Rule 45(d)(3) provides, in relevant part, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies…." Fed. R. Civ. P. 45(d)(3)(A)(iii). "A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted."

---

[1] Movants consider the then-pending motion to vacate the "most important" reason the Court should grant the motion. (Mot. at 188.)

*F.T.C. v. Trudeau*, No. 5:12MC35, 2012 WL 5463829, at *2 (N.D. Ohio Nov. 8, 2012) (quoting *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010); *CH Holding Co. v. Miller Parking Co.*, No. 12-CV-10629, 2013 WL 4516382, at *2 (E.D. Mich. Aug. 26, 2013) ("The party seeking to quash a subpoena bears a heavy burden of proof."). "If the documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Cleveland Clinic Health System-E. Region v. Innovative Placements, Inc.*, No. 1:11-CV-2074, 2012 WL 187979, at *2 (N.D. Ohio Jan. 23, 2012) (quoting *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008).

Because Nice seeks relief pursuant to section 1983, the Court will apply federal privilege law. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) ("Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."). The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance…." *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976). But the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Id.*

The party asserting the privilege bears the burden of establishing its existence. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). "Claims of attorney-client

privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

Movants also bear the burden of establishing that the information sought in the subpoenas is afforded work-product protection. *See United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) ("A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'"). The work-product doctrine generally shields from discovery documents and tangible things that were prepared in anticipation of litigation. *See In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) ("The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process.") (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). To determine whether a document was "prepared in anticipation of litigation" the court asks whether the document was prepared "because of" a party's subjective anticipation of litigation and whether the subjective anticipation was objectively reasonable. *Roxworthy*, 457 F.3d at 594.

## C. Analysis

### a. The Protective Order

While fashioned as a motion to quash and for a protective order, movants' briefing fails to address the latter. Rule 26 provides that a person from whom discovery is sought "may move for a protective order in the court where the action is pending…."

Fed. R. Civ. P. 26(c)(1). The motion must include a certification that the movant has conferred with the affected parties in an attempt to avoid court involvement in the discovery dispute. *Id.* A court may then issue a protective order "for good cause shown…." *Id.* The burden of establishing good cause to issue a protective order lies with the movant. *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534 (S.D. Ohio 2014) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To establish good cause, a movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix*, 11 F. App'x at 500 (internal quotation marks omitted).

Movants did not provide the required Rule 26 certification. Nor did they meet their burden (or even attempt to) of showing serious injury resulting from the required discovery. The Court declines to issue a protective order.

### b.       The Subpoena *duces tecum*

As an initial matter, the Court notes that movants' motion does not comply with Rule 45(e)(2), which requires "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material … [to] describe the nature of the withheld documents, communications, or tangible things in a manner that … will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). Instead, movants simply assert—without support—that Nice "should not be permitted to review the documents … because they are privileged." (Mot. at 192-93.) The Court disagrees.

The subpoena *duces tecum* requests "[a]ll correspondences, including emails, between any agent of the [CCPO] and any agent of the Akron Police Department regarding James Nice from August 27, 2017 until the present. Also produce the complete phone records for prosecutor Matthew Meyer for July 10, 2018." (Doc. No. 29-2 at 199.) Movants assert that disclosing these records "could result" in the revelation of Meyer's "decision-making process and internal investigative process regarding [Nice's] criminal case[]" (Mot. at 191), thus triggering the attorney-client privilege and work product doctrines.

Movants have failed to establish that the attorney-client privilege applies. The attorney-client privilege protects confidential communications between an attorney and her client, for purposes of obtaining legal advice. *Fisher*, 425 U.S. at 403. Movants do not claim to have an attorney-client relationship with any City police officers.[2] Nor do they claim that the requested documents seek, or provide, legal advice. As such, movants have failed to establish that the requested documents are subject to attorney-client privilege.

Movants also claim the requested documents are protected by the work product doctrine pursuant to Rule 26(b)(3). (Mot. at 191.) But Rule 26, alone, is insufficient to provide movants with their requested relief. Rule 26 only applies to "a party" seeking discovery from "another party or its representative[.]" Fed. Rule Civ. P. 26(b)(3). Movants are not parties to the current action. That is not to say non-party prosecutors

---

[2] According to the American Bar Association, "[t]he prosecutor's client is the public, not particular agencies or victims." *ABA Standards for Criminal Justice, Prosecutorial Investigations*, 8 (3d ed. 2014).

have no work-product protection. *Lawrence for Estate of Hoffman v. Madison Cty.*, No. 5:13-CV-383-GFVT-REW, 2015 WL 13636281, at *4 (E.D. Ky. Feb. 24, 2015) ("Just because Rule 26(b)(3) textually does not encompass a non-party does not compel the conclusion that a non-party has no work product shield.").

While Rule 26(b)(3) does not textually protect prosecutorial documents from civil discovery, "[c]ourts have extended work-product protection to non-parties when doing so vindicated the purposes" underlying the common-law work product doctrine. *Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 142 (S.D.N.Y 2014) (citation and quotation marks omitted) "There are three such purposes: protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from 'free-loading' off their adversaries' work, and preventing interference with ongoing litigation." *Id.* at 142-43.

Factors two and three are not applicable. Contrary to movants' contention (*See* Mot. at 192), this is not a case where Nice is attempting to take undue advantage of his adversary's industry or efforts. Indeed, movants are non-adversary, third-parties in this case. Further, Nice's requests are directly pertinent to his abuse of process and civil conspiracy claims and no amount of diligence will allow Nice to recreate the contents of the requested communications. Finally, discovery will not interfere with ongoing litigation because the underlying criminal case is closed.

Regarding factor number one, protecting attorney mental impressions is a primary concern in applying the work-product doctrine. *See Lawrence for Estate of Hoffman*, 2015 WL 13636281, at *5. As such, reviewing courts typically differentiate

between factual work-product and "core", or mental impression, work product. *Schomburg*, 298 F.R.D. at 143. Factual work product receives only a qualified protection that can be overcome by a showing that the requesting party has a substantial need for the material and can not obtain it elsewhere without undue hardship. *Cherry v. Howie*, No. 5:14-CV-179-TBR, 2016 WL 9525234, at *2 (W.D. Ky. Sept. 27, 2016) (internal citations omitted). Core work product receives more stringent protection that is "'near absolute'" and requires a "'highly persuasive showing of need.'" *Schomburg*, 298 F.R.D. at 143 (quoting *Crosby v. City of New York*, 269 F.R.D. 267, 278 (S.D.N.Y. 2010)).

Nice asserts that he is primarily seeking factual work product (Opp'n at 247) and correctly recognizes that factual work product is "subject to disclosure under the lower standard of review." (*Id.* at 245.) But Nice has not met that standard. Nice asserts that the requested documents are "*relevant* to [his] abuse of process claim." (*Id.*) (emphasis added). The Court agrees. But Nice was required to show substantial need—not relevancy. Further, to the extent Nice seeks communications between movants and the Akron Police Department (*See* Doc. No. 29-2 at 199), Nice fails to address why those documents cannot be obtained from the defendants. Nice has failed to articulate a substantial need for documents that cannot be obtained elsewhere. He has also failed to clear the heightened standard related to core work product.

However, not every document contained in a prosecutor's file is entitled to work-product protection. *See State ex rel. Carpenter v. Jones*, 651 N.E.2d 993, 994 (Ohio 1995). To qualify as work product, the materials must have been prepared in anticipation of litigation. A document is prepared in anticipation of litigation if it was prepared

"because of" a reasonable belief of future litigation. *Roxworthy*, 457, F.3d at 593-94. Documents that would have been prepared in "substantially the same manner irrespective of the anticipated litigation[,]" are not afforded work-product protection. *Id.*

Movants do not claim to have anticipated litigation leading up to Meyer's July 10, 2018 motion to vacate Nice's plea. Because there was no pending litigation, or reasonable anticipation of pending litigation, involving Nice on July 10, 2018, the requested communications cannot be said to have been created "because of" litigation. These communications are not protected. Nor are communications created prior to July 10, 2018 that do not independently qualify for work-product protection under Sixth Circuit precedent.

Nice claims that, to the extent the requested documents are considered work product, the protection was waived when "emails related to these communications were produced … during discovery." (Opp'n at 242.) But this argument misses the mark. Waiver applies when the work product *itself* has been inserted into the case. *Futhey v. United Transp. Union Ins. Ass'n*, No. 1:14 CV 463, 2015 WL 3367517, at *2 (N.D. Ohio April 28, 2015). Nice simply claims that the protection was waived when emails *related* to the privileged communications were produced. There is no evidence that waiver is applicable here.

Movants shall produce all non-privileged documents that fall within the scope of the subpoena *duces tecum*. Movants shall also comply with Rule 45(e)(2)(A) by providing a description of all documents withheld as privileged so Nice—and, if necessary, the Court—can assess the legitimacy of movants' privilege claims.

### c.    The Subpoena *ad testificandum*

Movants assert that Meyer's attorney-client and work-product privileges prevent him from giving any testimony in this case. (Mot. at 191.) But they fail to cite any cases for the proposition that prosecutors are immune from depositions in subsequent civil lawsuits. In fact, "'[c]ourts have expressly found the[se] privilege[s] unavailable when a prosecutor in a prior criminal investigation later objects to discovery … in a related civil lawsuit.'" *Wong v. Thomas*, 238 F.R.D. 548, 551 (D. N.J. 2007) (quoting *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, at *2 (N.D. Ill Nov. 13, 1997)).

Even so, subpoenas seeking civil depositions of former prosecutors are typically given "'special scrutiny' because of the potential for abuse…." *Cherry*, 2016 WL 9525234, at *3. In these situations, courts have sought instruction from cases involving discovery of opposing litigation counsel. *Doubleday v. Ruh*, 149 F.R.D. 601, 613 (E.D. Cal. 1993). "Discovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information …; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Nice's brief does not address these factors. Nonetheless, the Court will apply these criteria to the subpoena compelling Meyer's deposition.

Because Nice's brief is silent on the issue, it is unclear whether other means exist to obtain the desired information. Nice claims the deposition would focus on the events leading up to Meyer's motion to vacate Nice's plea. (Opp'n at 238.) Nice should glean

some insight into Meyer's motion when movants produce the emails and communications related thereto. If the documents lend credence to his civil conspiracy or abuse of process claims, Nice may request that the Court reconsider allowing Meyer's deposition. *See Doubleday*, 149 F.R.D at 614 (requiring requesting party to explore other discovery mechanisms before deposing a prosecuting attorney).

Regarding the second factor, there is no question the requested information is relevant. Nice seeks to depose Meyer about whether the defendants improperly influenced his decision to prosecute Nice and later move to vacate his plea. However, as noted above, some of that information will likely fall within work-product protection, particularly information related to Meyer's decision-making process. Nice has failed to establish a substantial need for work-product information at this time. Nice has also failed to demonstrate factor three—that the information is crucial to his case. It is possible that movants' document production will provide sufficient insight to support, or refute, Nice's civil conspiracy claims without the need for a deposition.

After reviewing movants' document production, Nice may be able to demonstrate that a deposition will prove crucial. At this time, however, the Court will follow the reasoning in *Cherry* and *Doubleday* and disallow the deposition of Meyer.

**III.**        **Conclusion**

For the reasons set forth above, movants' motion to quash the subpoenas and issue a protective order is **DENIED in part and GRANTED in part**. Meyer is not required to give a deposition at this time. Movants shall produce all non-privileged documents that fall within the scope of the subpoena and shall provide descriptions of all documents for which movants assert privilege. Movants have failed to demonstrate good cause for—and, therefore, the Court will not issue—a protective order.

**IT IS SO ORDERED**.

Dated: December 12, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**